# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## NEWARK DIVISION

-------------------------------------------------------X

ALMUTAH SAUNDERS,

     Plaintiff,

     v.

                                          CIVIL ACTION No.

THE NEW JERSEY DEPARTMENT OF
CORRECTIONS BY AND THROUGH
THE STATE OF NEW JERSEY;
MARCUS O. HICKS, IN HIS OFFICIAL
CAPACITY AS THE COMMISSIONER
OF THE NEW JERSEY DEPARTMENT OF
CORRECTIONS;
JOHN DOE No. 1 THROUGH No. 10
(NAME BEING GENDER NEUTRAL
AS TRUE IDENTITY IS UNKNOWN),

     Defendants.
-------------------------------------------------------X

1

## COMPLAINT

PLAINTIFF, ALMUTAH SAUNDERS ("Plaintiff" or "MR. SAUNDERS"), by and through his attorneys, hereby complains against the defendants and says:

1.  Plaintiff files this Complaint pursuant to the Civil Rights Act of 1871 ("CRA"), 42 U.S.C. §1983 et seq. and the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. § 1997, with respect to the named Defendants violating, depriving and denying the Plaintiff of the rights, privileges, or immunities secured or protected by the Constitution and  laws of the United States.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345 and under Title II of the ADA, 42 U.S.C. § 12133, and 28 U.S.C. §§ 1331, 1345.  The Court may grant the relief sought in this action pursuant to 28 U.S.C. §§ 2201-2202.

3.      Plaintiff is authorized to initiate this action pursuant to 42 U.S.C. § 1997a.

4.      All pre-filing requirements specified  in 42 U.S.C. § 1997b have been met.

## VENUE

5.  Venue in the District of New Jersey is proper pursuant to 28 U.S.C. § 1391, as a substantial portion of the acts and omissions giving rise to this action occurred in the District of New Jersey, § 1391(b).

## DEFENDANTS

6.    Defendant THE NEW JERSEY DEPARTMENT OF CORRECTIONS BY AND THROUGH THE STATE OF NEW JERSEY ("State") owns, operates, manages, funds and administers several prisons, half-way houses and work release facilities (all such facilities collectively the "DOC") which in part provide inpatient medical and psychiatric services to persons incarcerated at and in the custody and control of the DOC with mental illnesses, addictive diseases, and developmental disabilities.

7.    Defendant MARCUS O. HICKS ("Hicks") is the Commissioner of the DOC and the person ultimately responsible for all operations of the DOC and its staff. Hicks is sued in his official capacity as Commissioner of the DOC.

8.    Defendants JOHN DOE No. 1 THROUGH 10 (name being gender neutral as true identity is unknown) ("Doe") are fictitious defendants, who are entities and/or individuals whose gender and true identity is unknown to Plaintiff but whose identity may be revealed during the period of discovery that will occur relative to this action, and who may be liable for Plaintiff's damages as referenced herein.

9.    The Doe defendants constitute individuals, parties, parents, subsidiaries, employees and/or agents of the named defendants and it is intended that such individuals

and other entities will be more particularly identified in the amendments to pleadings following completion of discovery. Such individuals/entities may include but are not necessarily limited to employees, agents, subcontractors, contract employees of the DOC or the State .

10. For brevity's sake and where appropriate, all of the defendants referenced above shall hereafter be collectively referred to as "defendants."

11. Defendants are legally responsible, in whole or in part, for serving and medically attending to incarcerated  persons  with disabilities, such as the plaintiff, in the most integrated setting appropriate to their needs, and  for the operation of, and conditions at the DOC including, at a minimum, the health, safety, protections, supports, services, and treatment of persons with disabilities, such as the plaintiff, residing in or confined in the DOC.

12. Defendants are governmental authorities or agents thereof with responsibility for the administration of the DOC within the meaning of 42 U.S.C. § 1997a.

13. At all relevant times, Defendants or their predecessors in office have acted  or failed to act, as alleged herein, under color of state law.

14. At all relevant times, Defendants, or their predecessors in office, have acted or failed to act, as alleged herein, with deliberate indifference to the medical needs and psychiatric condition and evaluation of the plaintiff.

15. At all relevant times, Defendants or their predecessors in office have acted  or failed to act, as alleged herein, with deliberate indifference to the medical necessity of involuntarily and

4

forcibly administering the drug Risperdal to the plaintiff, and the side-effects and consequences of prolonged ingestion of such a drug upon plaintiff.

16.        This suit is brought to recover damages and other relief, and the costs of suit, including reasonable attorney and expert fees, for the damages Plaintiff has sustained as a result of Defendants' acts and omissions committed with deliberate indifference to the health, welfare and life of the plaintiff.

### FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

Background

17.        Defendant DOC is an "institution" within the meaning of 42 U.S.C. §1997(1)(B)(i).

18.        Commencing in 2005 and continuing through December 2016 ("relevant period") defendants forcibly and involuntarily administered to the plaintiff, while in the care and custody of the DOC, the drug Risperdal in any of its forms, including but not limited to  Invega and risperidone.

19.        Risperdal is an antipsychotic medication, belonging to a class of drugs which have become known as "atypical" or "second generation" ("SGA") antipsychotics.  Other atypical antipsychotics include Clozaril (clozapine), Seroquel (quetiapine), Zyprexa (olanzapine), Geodon (ziprasidone), Abilify (aripiprazole), and Invega (paliperidone) (the active ingredient of which is 9-hydroxy-risperidone, the active metabolite of risperidone), all of which began coming onto the market in 1989.

20.        Risperdal was originally developed and approved for use in the treatment of symptoms associated with schizophrenia.   However, Risperdal does not cure schizophrenia or

any other mental health condition. The pharmacologic action of Risperdal is unknown but is thought to be dependent on its ability to block or moderate the level of dopamine, a chemical found in the brain that in excessive amounts is believed to cause abnormal thinking and hallucinations.

21.    Risperdal in any of its forms, including but not limited to  Invega and risperidone, produces and creates in the persons ingesting same one or more of the following serious and/or permanent adverse effects: hyperprolactinemia, gynecomastia (abnormal development of breasts in males), galactorrhea (lactation), pituitary tumors, microadenomas of the pituitary gland, breast cancer, osteoporosis, decreased bone mineral density, metabolic syndrome, dyslipidemia, hypertension, diabetes mellitus, diabetic ketoacidosis (DKA), hyperosmolar coma, hyperglycemia, glucose dysregulation, insulin insufficiency, insulin resistance, pancreatitis, tardive dyskinesia, extrapyramidal symptoms, involuntary movement disorders, dyskinesia,  dystonia, akathisia, parkinsonism, neuroleptic malignant syndrome (NMS) and/or other related conditions.

22.    Sections 502(a) and 201(n) of the Federal Food, Drug, and Cosmetic Act (the "FDCA") (21 U.S.C. §§ 352(a) and 321(n)) require the defendants to fully and accurately disclose information relating to hyperprolactinemia, gynecomastia, hyperglycemia, diabetes mellitus, ketoacidosis, tardive dyskinesia and other adverse effects to patients such as the plaintiff.

23.    Sections 502(a) and 201(n) of the FDCA (21 U.S.C. §§ 352(a) and 321(n)) prohibit the defendants from minimizing or concealing these risks, and from promulgating misleading claims that Risperdal is as safe as or safer than other antipsychotic medications on the market.

24.    Defendants have, with deliberate indifference to the health, welfare and medical condition of the plaintiff, violated, and continue to violate, Sections 502(a) and 201(n) of the FDCA (21 U.S.C. §§ 352(a) and 321(n)) by omitting and concealing information concerning these risks from Plaintiff .

25.    On December 29, 1993, Ortho-Janssen (the creator and manufacturer of Risperdal) obtained approval from the FDA to  market Risperdal oral tablets for the treatment of "manifestations of psychotic  disorders" (schizophrenia) in adults with a target dosage of 4 to 6 milligrams per day.

26.    The FDA subsequently approved Risperdal in other formulations for the treatment of schizophrenia in adults ─ on June 10, 1996, the FDA approved Risperdal oral solution; on April 2, 2003, the FDA approved the Risperdal M-Tab for adults; and on October 29, 2003 the FDA approved Risperdal Consta, a long-acting injection of Risperdal.

27.    On December 4, 2003, the FDA approved additional uses of Risperdal oral tablets, Risperdal oral solution and Risperdal M-Tab as monotherapy for the short-term treatment of acute manic or mixed episodes associated with bipolar I disorder, and as combination therapy, with Lithium or Valproate, for the short-term treatment of acute manic or mixed episodes associated with bipolar I disorder in adults.

28.    In October 2006, Risperdal was approved for the treatment of irritability associated with autistic disorder in children and adolescents (between the ages of 5 and 16), including symptoms of aggression towards others, deliberate self-injuriousness, temper tantrums and quickly changing moods. Risperdal has only been approved for the treatment of irritability associated with autistic disorder in children and adolescents, and not the whole Autistic

Spectrum Disorder – *i.e.*, the wider variation of autistic symptoms including withdrawal from social interactions, problems communicating, and repetitive behaviors.

29.    On August 22, 2007, Risperdal received approval from the FDA for the treatment of schizophrenia in adolescents ages 13-17 years, and for the short-term treatment of acute manic ormixed episodes associated with bipolar I disorder in children and adolescents ages 10-17 years.

30.    The Defendants, acted in concert with one another and with deliberate indifference to the safety, health and medical well-being of the plaintiff, did fraudulently convey to the plaintiff false and misleading information concerning the safety and efficacy of Risperdal and concealed and failed to disclose to the plaintiff  the risks of serious adverse events, including weight gain,diabetes mellitus, pancreatitis, metabolic syndrome, hyperprolactinemia, gynecomastia, tardive dyskinesia and other adverse effects associated with Risperdal and/or Invega.

31.    These concerted efforts by the defendants, jointly and severally, resulted in significant permanent medical, psychological and physical harm to plaintiff, as is hereinafter set forth and described.

32.    But for the actions of Defendants, individually, jointly, and in concert with one another, Plaintiff would not have ingested, or permitted injection of, Risperdal. Defendants' tortious actions make them each individually liable and responsible for Plaintiffs' injuries and damages as described herein from the ingestion and/or injection of Risperdal.

33.    During the relevant period the plaintiff, due to and solely from the prolonged and continual ingestion of Risperdal, has manifested and suffered from the medical and physical

side-effects of continual and prolonged ingestion of Risperdal including, but not limited to gynecomastia (abnormal development of breasts in males), galactorrhea (lactation), and tumors.

34.     To counteract and ameliorate such side-effects the defendants caused the plaintiff to thrice undergo surgical procedures to remove the tumors in the plaintiff's chest; plaintiff currently has been again diagnosed with chest tumors which it appears will again require medical and surgical intervention to treat.

<u>Plaintiff</u>

35.     The plaintiff is a 43 year old African-American male suffering from certain neurological, psychiatric, developmental and educational disabilities and deficits.

36.     Prior to September, 2005 the plaintiff had been charged with having committed several criminal offenses in Essex County, New Jersey upon which he ultimately entered a plea of guilty and received an aggregate sentence of 30 years.

37.     Plaintiff's initial parole eligibility date presently is November, 2032.

38.     In September, 2005, the plaintiff was received by and admitted into the care and custody of the DOC and the defendants for service of the above sentence.

39.     During the approximately 16 years that the plaintiff has been in the care and custody of the defendants he has received no misconduct or misbehavior reports.

40.     During the approximately 16 years that the plaintiff has been in the care and custody of the defendants he has consistently programmed voluntarily and taken self-help and self-improvement and educational courses and is currently matriculating towards attaining his GED equivalency diploma.

41.     Upon his initial admission and entry into the DOC in 2005, and continually thereafter, the defendants incorrectly and negligently, and with deliberate indifference to the accuracy thereof, mis-diagnosed the plaintiff as suffering from Schizoaffective Disorder, Severe Psychosis, R/O Bipolar and Anti-Social Disorder.

42.     Defendants further incorrectly and negligently, and with deliberate indifference to the accuracy thereof, mis-diagnosed and opined that there was a high degree of probability that absent being forcibly medicated with Seroqel, Haldol, Haloperidol, Cogentin and Risperdal that the plaintiff would self-harm, was suicidal, would harm others, harm/destroy property, was unable or incapable of caring for himself and was incapable of voluntarily participating in a medical/psychiatric treatment plan.

43.     Thereafter, and through 2017, the plaintiff daily was administered involuntarily and against his will the above medications and with respect to Risperdal he was three times each day administered 6.0 mg.

44.     On multiple occasions the plaintiff complained to the defendants that he could not ingest the above medications, and especially Risperdal, as it made him violently ill and that he would refuse to ingest same. On these occasions the defendants would restrain and then forcibly medicate and render nearly unconscious the plaintiff by administering Haloperidal and Cogetin to the point that the plaintiff could no longer forcibly refuse and could not resist to take Risperdal and it was administered to him involuntarily.

45.     Approximately every six months during the relevant period, commencing in 2005, defendants  conducted an administrative hearing at which the plaintiff appeared but was denied the assistance of counsel toward the end of determination as to whether Risperdal and other

psychotropic medications would be forcible and involuntarily administered to the plaintiff ("hearing").

46.     At the conclusion of each such hearing, the determination was made by the defendants that the involuntary and forcible administration of Risperdal was warranted and would continue until the next hearing was conducted.

47.     Each said hearing was in violation of the plaintiff's constitutional due process rights as plaintiff was denied the assistance of counsel and was medically sedated and incapacitated to the point that the plaintiff could not meaningfully participate on his own behalf, which disability the defendants well knew, or should have known, and were deliberately indifferent to.

48.  While using said drug products, and as a direct and proximate result thereof, the Plaintiff developed one or more of the following serious and/or permanent adverse effects: rapid weight gain, hyperprolactinemia, gynecomastia (abnormal development of breasts in males), galactorrhea (lactation), pituitary tumors, microadenomas of the pituitary gland, breast cancer, osteoporosis, decreased bone mineral density, metabolic syndrome, dyslipidemia, hypertension, diabetes mellitus, diabetic ketoacidosis (DKA), hyperosmolar coma, hyperglycemia, glucose dysregulation, insulin insufficiency, insulinresistance, pancreatitis, tardive dyskinesia, extrapyramidal symptoms, involuntary movement disorders, dyskinesia, dystonia, akathisia, parkinsonism, neuroleptic malignant syndrome (NMS) and/or other related conditions.

49.  As a result of said injuries, Plaintiff has suffered significant bodily and mental injury, pain and suffering, mental anguish, disfigurement, embarrassment, and inconvenience, have been caused to incur past and future medical procedures, has been and will be required to undergo

mastectomy (surgery) to remove the breasts and tumors, and will suffer loss of earning capacity in the future.

50. On or about January 01, 2018 the defendants discontinued and ceased prescribing Risperdal to the plaintiff and substituted Remeron.

51.     Remeron (mirtazapine) is an antidepressant. The way mirtazapine works is still not fully understood, but it is thought to positively affect communication between nerve cells in the central nervous system and/or restore chemical balance in the brain.

52. Remeron is prescription medicine used to treat a certain type of depression called Major Depressive Disorder (MDD) in adults.

53. The most common side effects of ingesting Remeron are drowsiness, dizziness, strange dreams, dry mouth, constipation, increased appetite, and weight gain.

54.     Defendants discriminate and have discriminated  against the plaintiff, a "qualified individual[s] with a disability," within the meaning of the Americans with Disabilities Act, by administering medical services in a manner that denies him the opportunity to receive services in the most integrated setting appropriate to his needs.

55.     Significant, systemic deficiencies exist in Defendants' provision of medical services to plaintiff who is confined in the DOC.

56.     Mental health psychiatric and psychological services at the DOC substantially depart and deviate from generally accepted professional standards, violate the constitutional and federal statutory rights of persons confined therein, such as the plaintiff.

57. Persons confined to the DOC, such as plaintiff, also continue to suffer from additional, preventable harm, including: regression and loss of skills from inadequate treatment

and services, harm from excessive restraint and administration of sedating medications, harm

from inadequate medical and nursing care, harm from the lack of services to persons with

specialized needs and, in particular, suffering from the medical side effects of having ingested

Riseperdal.

58.     The foregoing paragraphs are each incorporated by reference in the following

Counts.

### COUNT I <u>NEGLIGENCE</u>

1.        The Defendants had a duty to exercise reasonable care in the prescribing and forcibly

causing the plaintiff to ingest Risperdal, including a duty to insure that such medical products

did not cause plaintiff to suffer from unreasonable, dangerous side effects when used alone or in

foreseeable combination with other drugs for prolonged periods of time.

2.        The Defendants failed to acknowledge, understand or inform the plaintiff

concerning the risks of prolonged ingestion of Risperdal including but not limited to rapid weight

gain, hyperprolactinemia, gynecomastia, tardive dyskinesia, and other adverse effects which

would.

3.        The Defendants were negligent in the prescribing of Risperdal to plaintiff in that,

among other things, they:

a.        Negligently and with deliberate indifference to the health and welfare of the

plaintiff, failed to medically consider and also to warn Plaintiff,  prior to use of Risperdal, about

the following:

i.          The signs and symptoms of known anticipated serious adverse events including but  not limited to rapid weight gain, hyperprolactinemia, gynecomastia, diabetes mellitus, tardive dyskinesia, and potentially fatal side effects;

ii.          The need for diagnostic tests to be performed on the plaintiff prior to and during use of Risperdal to discover and ensure against   serious or potentially fatal side effects; and

iii.          The need for comprehensive, regular medical monitoring to ensure early discovery of serious or potentially fatal side effects;

b.          Failed to warn that the risks associated with the ingestion and/or injection of Risperdal exceeded the risks of other available forms of treatment for Plaintiffs' condition;

c.          Failed to effectively warn about the increased danger and potentially fatal relationship in combining the use of Risperdal either together or with various other drugs or use in treatment of Plaintiff's condition;

d.          Prescribed and forcibly administered Risperdal disregarding and despite the fact that the risks of the drug were so high and the benefits of the drug were so speculative that no reasonable  pharmaceutical company, exercising due care, would have done so;

e.          Mis-represented or knowingly omitted, suppressed, or concealed material facts regarding the safety and efficacy of Risperdal from the plaintiff;

f.          Failed to perform medical evaluations and clinical assessments of the plaintiff during the relevant period because they knew, or should have known, that Risperdal was being prescribed in a fatal or injurious combination or manner; and

g.      Were otherwise careless, negligent, grossly negligent, reckless, and acted with willful and wanton disregard for the rights of Plaintiff.

4.   As a direct and proximate result of Plaintiff's ingestion of and/or injection with Risperdal, and the acts and failure to act by the Defendants, Plaintiff was caused to develop the aforesaid injuries and damages.

5.   The Defendants' conduct is outrageous because of willful or reckless indifference to the health and safety of Plaintiff so as to justify an award of punitive damages.

WHEREFORE, Plaintiff ALMUTAH SAUNDERS requests judgment in his favor for compensatory and punitive damages against the Defendants, jointly and severally, reasonable attorney fees, costs of this suit, interest at the legal rate and grant and such other and further equitable relief as the Court may deem    just and proper.

.

## COUNT II <u>FRAUD</u>

1.   Defendants knowingly and intentionally made false and misleading statements to the plaintiff regarding the uses, safety, and efficacy of Risperdal , and/or concealed, suppressed, and omitted important information regarding the uses, safety, and efficacy of Risperdal,  in general, and in treating conditions such as those of Plaintiff.

2.   These deliberate misrepresentations and/or concealment, suppression, and omission of material facts as alleged herein, including, but not limited to:

a.      Making false and misleading claims regarding the known risks of  Risperdal and/or suppressing, failing to disclose and mischaracterizing the known risks of Risperdal,

including, but not limited to,  rapidweight gain, hyperprolactinemia, gynecomastia, diabetes

mellitus, diabeticketoacidosis, tardive dyskinesia, and death;

       b.      Making false and misleading statements that Risperdal is more effective than

other antipsychotic drugs and/or omitting material information  showing  that  Risperdal  i s no

more  effective  thanother available antipsychotic drugs;

       c.      Failing to issue adequate warnings concerning the risks and dangers of ingesting

and/or being injected with Risperdal which would disclose the nature and extent of the harmful

side effects of Risperdal;

       d.      Making false and misleading misrepresentations concerning the safety, efficacy

and benefits of Risperdal without full and adequate disclosure of the underlying facts which

rendered such statements false and misleading.

       3.   The Defendants had during the relevant period a continuing duty to warn, which

arose when they knew, or with reasonable care should have known, that Risperdal was

associated with and the proximate cause of adverse effects which are injurious or fatal.

       4.   The Defendants engaged in calculated and deliberate silence despite their knowledge

of the misinformation and misrepresentations regarding the uses, safety and efficacy of Risperdal

and were deliberately indifferent to the medical and physical of the Plaintiff.

       5.   The Defendants' actions as set forth herein constitute knowing misrepresentation,

omission, suppression and concealment of material facts, made with the intent  that the plaintiff

would rely upon such misrepresentation, concealment, suppression or omission, in connection

with the ingesting of Risperdal.

6.   Plaintiff was induced by Defendants' misrepresentations, omissions, suppression and concealment to ingest Risperdal.

7.   As a direct and proximate result of the aforesaid fraudulent conduct by Defendants Plaintiff suffered the aforesaid injuries and damages.

8.   The Defendants' conduct is outrageous because of willful or reckless indifference to the health and safety of Plaintiff so as to justify an award of punitive damages.

WHEREFORE, Plaintiff ALMUTAH SAUNDERS requests judgment in his favor for compensatory and punitive damages against the Defendants, jointly and severally, reasonable attorney fees, costs of this suit, interest at the legal rate and grant and such other and further equitable relief as the Court may deem    just and proper.

## COUNT III

### STRICT PRODUCT LIABILITY

### (Failure to Warn)

1.      The Risperdal prescribed by the defendants and ingested by the plaintiff  is a dangerous and, as prescribed, a defective drug product.

2.      Despite the fact that the Defendants knew or should have known  that Risperdal was associated with rapid weight gain, hyperprolactinemia, gynecomastia (abnormal development of breasts in males), galactorrhea (lactation), pituitary tumors, microadenomas of the pituitary gland, breast cancer, osteoporosis, decreased bone mineral density, metabolic syndrome,

dyslipidemia, hypertension, diabetes mellitus, diabetic ketoacidosis (DKA), hyperosmolar coma, hyperglycemia, glucose dysregulation, insulininsufficiency, insulin resistance, pancreatitis, tardive dyskinesia, extrapyramidal symptoms, involuntary movement disorders, dyskinesia, dystonia, akathisia, parkinsonism, neuroleptic malignant syndrome (NMS) and/or other related conditions, the Defendants recklessly, negligently, and with willful and wanton deliberate indifference to the health and safety of Plaintiff, failed to provide an adequate warning with regard to hyperglycemia, diabetes mellitus, or related conditions. Despite the fact that the Defendants knew or should have known that Risperdal is  associated with hyperprolactinemia, gynecomastia and galactorrhea, that information was deliberately withheld from the plaintiff.

3.      As a result of the foregoing, Risperdal, as prescribed by the defendants is both defective and unreasonably  dangerous drug product.

4.      As a direct and proximate result of ingestion or injection with of Risperdal and the aforesaid acts and failure to act by Defendants, Plaintiff was caused to suffer the aforesaid injuries and damages. Defendants' conduct is outrageous because of reckless indifference to the health and safety of Plaintiff so as to justify an award of punitive damages.


        WHEREFORE, Plaintiff ALMUTAH SAUNDERS requests judgment in his favor for compensatory and punitive damages against the Defendants, jointly and severally, reasonable attorney fees, costs of this suit, interest at the legal rate and grant and such other and further equitable relief as the Court may deem    just and proper.

18

## COUNT IV

### BREACH OF EXPRESS WARRANTY

1.  The Defendants expressly warranted to plaintiff that as prescribed to him Risperdal is safe and effective and that Risperdal is well tolerated in adequate and well-controlled clinical studies.

2.  Risperdal, as prescribed by the defendants, does not conform to these express representations because   Risperdal is dangerous and life-threatening as prescribed as it causes high levels of serious, life-threatening side effects.

3.  As a direct and proximate result of Plaintiffs' ingestion of and/or injection with Risperdal the aforesaid acts and failure to act by Defendants, Plaintiff was caused to develop the aforesaid injuries and damages.

4.  The Defendants' conduct is outrageous because of reckless indifference to the health and safety of Plaintiff so as to justify an award of punitive damages.

WHEREFORE, Plaintiff ALMUTAH SAUNDERS requests judgment in his favor for compensatory and punitive damages against the Defendants, jointly and severally, reasonable attorney fees, costs of this suit, interest at the legal rate and grant and such other and further equitable relief as the Court may deem   just and proper.

## COUNT V

### BREACH OF IMPLIED WARRANTY

1.  At the time the Defendants prescribed and forced the plaintiff to ingest  Risperdal Defendants knew of the medical method and manner for which Risperdal was intended and

19

impliedly warranted Risperdal to be of merchantable quality and safe and fit for such prescribed use.

2.   Plaintiff reasonably relied upon the skill and judgment of the Defendants  as to whether Risperdal was of merchantable quality and safe and fit for its intended use.

3.   Contrary to such implied warranty, Risperdal, as prescribed by the defendants, was not of merchantable quality or safe or fit for its intended use, because Risperdal is unreasonably dangerous and unfit for the ordinary purposes for which it was used as described above.

4.   As a direct and proximate result of Plaintiffs' ingestion of Risperdal and  the aforesaid acts and failure to act by the Defendants, Plaintiff was caused to suffer the aforesaid injuries and damages.

5.   The Defendants' conduct is outrageous because of reckless indifference to the health and safety of the Plaintiff so as to justify an award of punitive damages.

WHEREFORE, Plaintiff ALMUTAH SAUNDERS requests judgment in his favor for compensatory and punitive damages against the Defendants, jointly and severally, reasonable attorney fees, costs of this suit, interest at the legal rate and grant and such other and further equitable relief as the Court may deem   just and proper.


## COUNT VI

## AMERICANS  WITH  DISABILITIES  ACT

1.   The Americans with Disabilities Act requires that a state and it's institutions, such as the DOC, provide proper and safe medical and rehabilitation services to  "qualified persons" with disabilities, such as the plaintiff,  appropriate to their needs. 42 U.S.C. § 12132.

20

2.  The defendants' acts and omissions alleged herein violate the Americans with Disabilities Act and its implementing regulations. 42 U.S.C. §§ 12132-12134; 28 C.F.R. § 35.130(d) and plaintiff is being deprived of the rights, privileges, or immunities secured or protected by the Americans with Disabilities Act.

3.   The Defendants' conduct is outrageous because of reckless indifference to the health and safety of the Plaintiff so as to justify an award of punitive damages.

WHEREFORE, Plaintiff ALMUTAH SAUNDERS requests judgment in his favor for compensatory and punitive damages against the Defendants, jointly and severally, reasonable attorney fees, costs of this suit, interest at the legal rate and grant and such other and further equitable relief as the Court may deem    just and proper.

## COUNT VII

## CIVIL RIGHTS ACT-DUE PROCESS

1.  The Fourteenth Amendment Due Process Clause requires that the State, through its institutions such as the DOC, provide to the residents thereof adequate food, shelter, clothing, and medical care. Youngberg v. Romeo, 457 U.S. 307, 315, 320-24 (1982).

2.  The defendants' acts and omissions alleged herein violate and infringe upon the legal rights and substantive liberty interests of the plaintiff, who is confined in the DOC, and constitutes abridgement of plaintiff's full enjoyment of his rights, privileges, or immunities secured or protected by the Fourteenth Amendment to the Constitution of the United States; and deprive those individuals, such as the plaintiff, of such rights, privileges, or immunities.

3.  The defendants' acts and omissions alleged h e r e i  in v iolate Title VI of the Civil Rights Act of 1964, as amended, and the regulationspromulgated thereunder. 42 U.S.C. §§ 2000d to 2000d-7.

4.  Unless restrained by this Court, Defendants will continue to engage in the acts and omissions set forth herein and deprive persons such as the plaintiff residing in or confined to the DOC of rights, privileges, or immunities secured or protected by the Constitution of the United States.

5.  The Defendants' conduct is outrageous because of reckless indifference to the health and safety of the Plaintiff so as to justify an award of punitive damages.

WHEREFORE, Plaintiff ALMUTAH SAUNDERS requests judgment in his favor for compensatory and punitive damages against the Defendants, jointly and severally, reasonable attorney fees, costs of this suit, interest at the legal rate and grant and such other and further equitable relief as the Court may deem   just and proper.

## DESIGNATION OF TRIAL COUNSEL

PLEASE TAKE NOTICE that attorney THOMAS R. ASHLEY, ESQ.  is hereby designated as trial counsel in the above-captionedlitigation for the Plaintiff.

## JURY DEMAND

PLEASE TAKE NOTICE that the Plaintiff demands a trial by juryas to all issues so triable.

THOMAS R. ASHLEY

_____/s/_____

THOMAS R. ASHLEY, ESQ.
ATTORNEY FOR PLAINTIFF SAUNDERS


Dated: February 01, 2022